## Jones et al. *versus* Gilmore.

G. sold ten barges of coal to B., in June, to be delivered at Memphis, Tennessee, the barges to be returned to Louisville, Kentucky, within sixty days, or within a reasonable time. Two of these barges were not returned in November, and the Mississippi river freezing up in that month they could not be returned. In December, by reason of an extraordinary ice gorge, these two barges were swept away from their moorings at Memphis and lost. G. sued B. for the value of the barges, and the court below held, that as B. had not returned them within the specified or reasonable time he was liable in damages for their value. *Held*, that this was error; that as the detention of the barges was the remote and not the proximate cause of the loss, and they had been destroyed by an extraordinary accident that could not be forecast, B. was not responsible.

October 13th 1879. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY and STERRETT, JJ. GREEN, J., absent.

Error to the Court of Common Pleas, No. 2, of *Allegheny county*: Of October and November Term 1879, No. 104.

Assumpsit by John Gilmore against William H. Brown and N. M. Jones, trading as Brown & Jones, to recover the value of two empty coal barges.

The plaintiff declared in assumpsit for the value of two barges, which he alleged the defendants had agreed to return to him from Memphis, Tennessee to Louisville, Kentucky, within not less than thirty nor more than sixty days, in one count, and in another count, for not returning them within a reasonable time, and not returning them at any time, whereby they were wholly lost; to which the defendants pleaded *non assumpserunt*, with leave to give in evidence special matters in their affidavit of defence, &c., denying that they, as a firm, had so agreed, and alleging that W. H. Brown, individually, had agreed to tow back plaintiff's barges "on exchange," Gilmore having agreed to tow back a like number of barges on that trip for him; and further, that defendants agreed to unload said barges within a reasonable time, considering the ordinary course of business and the stage of water for boating; and that they did unload said barges as fast as the business and water would permit; denying that, as a firm, they had anything to do with returning the barges, and averring that they kept safely and cared for the barges at Memphis in a proper manner, until about the 26th day of December 1872, when these barges and other water-craft were swept away and wrecked, by an extraordinary ice-flood in the Mississippi river.

At the trial, before Ewing, P. J., it appeared that the two barges in dispute were of a fleet of ten, laden with coal, which Gilmore had sold to Brown & Jones, who were coal merchants, at Memphis, Tennessee. The barges, plaintiff alleged, were to be returned in sixty days or within a reasonable time. The barges and coal were delivered at Memphis, on June 21st 1872, to Brown & Jones,

[Jones v. Gilmore.]

who alleged that there was no specified time at which the barges were to be unloaded or returned. It was further alleged by Gilmore that Brown & Jones agreed to tow these barges back to Louisville "by exchange," Gilmore, on his return trip from Memphis, having towed back ten empty barges of Brown & Jones. Brown was a large owner and shipper of coal in his own right, and owned a number of tow boats, in which Brown & Jones had no interest. It was contended, therefore, that if there was any contract to tow back empty barges "by exchange," it should be regarded as the individual contract of Brown, and not binding on the firm. It was further contended that the barges were not delivered until late in the summer when the river was low, and when, as a consequence, the running of the steamers to which the coal was sold was suspended, and that therefore the coal had to remain in the barges until the fall, when navigation again opened; that as soon as the coal was sold and they could be sent back, the barges were returned. Two of these barges it appeared, however, remained at Memphis until November, when the Mississippi was frozen over for some two hundred miles below Cairo, the season being the most extraordinary in the memory of the oldest inhabitants along the river. It was shown that about the 26th of December 1872, the ice broke and the flood gorged it at and above Memphis, and when the gorge broke in passing Memphis, it swept away all the craft moored along the levee, among which were the two barges in question. The defendants were not charged with a want of care in their custody of the barges.

In their general charge, the court, inter alia, said:

"The defendants say there was no such contract; that there was no time mentioned, and they allege further, that it was understood that they were not to be delivered until they were emptied, and the defendants were to have a reasonable time for that. We do not recollect that the testimony on part of defendants as to time was very definite, further than they deny that the time was limited, and claim that the time of delivery—the time of their being emptied—was well understood to have reference to the course of trade and business of the purchasers. If that be the case, you will have to determine from all the evidence and circumstances of the case, what was a reasonable time for them, in the course of their business to empty these flats, so that they could be taken back to Louisville; and if a reasonable time would extend it to a period when there was no water and they were then carried away, the defendants are relieved. Of course the want of water to get the barges back would be a sufficient excuse for not returning them. The contract must be considered to have been made in view of all these contingencies, that if there was no water to take them back, they could not be expected to be taken back. Assuming that there was no contract as to time, then if they were not unloaded in a proper time,

⌊Jones *v.* Gilmore.⌋

but held there beyond a reasonable and proper time, then they might and should have been sent away, the fault was that of the defendants, and they would be responsible for them after that, as we before explained to you.  * * *

"For instance, let it be conceded that Brown & Jones were to have re-delivered these barges inside of sixty days, and that inside of that time without any unreasonable or improper delay on the part of the defendants in restoring the boats, this same flood had come and swept them away, it would be an answer and a sufficient excuse, on the part of the defendants, for the non-delivery of the boats.  It would be a loss not in the contemplation of either party at the time of the contract, and not in the power of either party to prevent, and it would have to fall upon the owner.  If therefore the·defendants are responsible for the loss, it would be in not having delivered them before the time this ice-flood came.  If the defendants had a contract to deliver at a particular time within sixty days, and it was in their power to do so, and they failed to do so, and kept them beyond that time, then after that time had expired they would be kept at the risk of the defendants, and if swept away by an ice-flood it would be their loss.  You will not understand us as stating what the actual facts are, but we are supposing that it was conceded that they were to have been taken back in sixty days, and instead they were kept for five or six months, and then the ice-flood came, the defendants would be responsible for the loss by the ice, because it was their fault in not having them in a place where the ice-flood would not have reached them."

Verdict for plaintiff for $1700, when defendants took this writ, and alleged that the court erred in charging as above.

*Thomas M. Marshall* and *Alex. M. Watson*, for plaintiffs in error.—The proximate cause of the loss was the extraordinary flood, and defendants were not responsible: Morrison *v.* Davis, 8 Harris 165; Ela *v.* French, 11 N. H. 356; Sedgwick's L. Cases on Measure of Damages 822.   *Actus dei nemini facit injuriam*: McGrew *v.* Stone, 3 P. F. Smith 441.

*Barton & Sons*, for defendant in error.—The ice-flood was in the Mississippi; it came from the far north.   There was no break up and no boats lost in the Ohio.   If the ·barges had been returned according to contract, in July and August, they would have been up in the third pool, in the Monongahela, under Captain Gilmore's coal tipple, reladen and ready to descend by the first rise, and in a place where the ice gorge in the Mississippi would never have touched them.

Mr. Justice TRUNKEY delivered the opinion of the court, January 5th 1880.

[Jones v. Gilmore.]

The learned judge of the Common Pleas so fairly submitted the case to the jury that the plaintiffs in error have no cause of complaint, except to so much of the charge as relates to the liability of defendants below for the value of the boats, if they were not returned within the time fixed by the contract, or if no date was named, then within a reasonable time.

For present purposes, it must be taken as established by the verdict, under the instructions of the court, that the defendants were bound by contract made in June 1872 to return the boats to Louisville, either within sixty days or a reasonable time, which they failed to do; that on December 27th 1872, the boats were swept away by an extraordinary ice-flood, and at that date there was no want of care on part of defendants, and "so far as their being carried away at that particular time the loss would be what is known in law as the act of God;" that if there was default on the part of defendants which would entitle the plaintiff to recover, it was at a time anterior to the ice-flood, and if they are responsible for the loss, it is because they did not deliver the boats before the flood came.    Upon these facts the jury were instructed that if it was in the defendant's power to deliver the boats within the sixty days, if that time was stipulated, or if no time named, within a reasonable time which had terminated before the flood, "then, after the time had expired, they would be kept at the risk of the defendants, and if swept away by an ice-flood, it would be their loss, * * because it was their fault in not having them in a place where the ice-flood would not have reached them."   In this we think there was error.

At the time of the flood the boats were the property of the plaintiff, and no negligence of the defendants as to their care contributed to the loss.    It is not alleged that they did or omitted anything to make them liable for the value of the boats prior to their destruction, and but for the flood they could have returned them at any time, without liability in damages for breach of contract other than caused by the delay.    The defendants were bailees of the boats for a specific use, which in nowise was departed from; and the contract did not provide for indemnity against loss by an extraordinary flood, nor did the parties contemplate danger therefrom when making it.    By what rule are they liable in damages to the value of the plaintiff's property which was destroyed by casualty?

It is an ancient and universal rule, resting upon obvious reason and justice, that a wrongdoer shall be held responsible for the proximate, and not for the remote, consequences of his actions: 2 Pars. Con. 455.    After illustrating by example and noting the difficulty in measuring the nearness or remoteness of effects, the learned author suggests a principle as useful, if not decisive, in all cases, namely, that every defendant shall be held liable for all of those consequences which might have been foreseen and expected as the result of his conduct, but not for those which he could not

have foreseen, and was therefore under no moral obligation to take into consideration. The rule is not limited to cases of special damage, but it applies to all damage : 2 Greenl. Ev., sects. 256, 261. In the case of contract the measure of damages is much more strictly confined than in tort, and generally the primary and immediate result of the breach of contract can alone be looked to : Mayne on Dam. 6. In Morrison *v.* Davis, 8 Harris 171, a summary of the rule and principle is applied to common carriers, with the remark that in any other case the question would present no difficulty. In that case the action was against the defendants, as common carriers on the Pennsylvania canal. Their boat was wrecked below Piper's dam by reason of an extraordinary flood; they started on its voyage with a lame horse, and by reason thereof great delay was occasioned in the transportation of the plaintiff's goods, and had it not been for this the boat would have passed the point where the accident occurred before the flood came, and would have arrived in time and safety at its destination. The court assumed that the flood was the proximate cause of the disaster, and decided that the lameness of the horse, which caused delay in the speed of the boat, was too remote to make the defendants responsible for the goods which were lost in the wreck. This case was cited and followed in Denny *v.* New York C. Railroad Co., 13 Gray (Mass.) 481, where it is said : " In that case may be found not only a clear and satisfactory statement of the law upon the subject, but a significant illustration of the rule which the decision recognises and affirms." 

A carrier contracted with a miller to carry for him two pieces of iron forming the broken shaft of a mill, and deliver the same to an artificer as a model for a new one. The shaft was indispensable to the working of the mill, which necessarily remained idle till the new one could be supplied, but of this the carrier was not aware. He did not deliver the pieces of iron within a reasonable time, and was sued by the miller for a breach of his agreement : *Held*, that the plaintiff could not recover as damages the loss or profits incurred by the stoppage of the mill, and the rule for damages was thus stated : " Where two parties have made a contract which one of them has broken, the damages which the other party ought to receive in respect of such breach of contract should be either such as may fairly and reasonably be considered as arising naturally, that is, according to the usual course of things, from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties, at the time they made the contract, as the probable result of the breach of it." If the special circumstances were communicated by one party to the other, the damages resulting from the breach of the contract which they would reasonably contemplate, would be the amount of injury which would follow ordinarily from a breach of contract under

[Jones v. Gilmore.]

those special circumstances so known and communicated.  But if those circumstances were unknown to the party breaking the contract, he at most could only be supposed to have had in contemplation the amount of injury which would arise generally, and in the great multitude of cases not affected by any special circumstances, from such a breach of contract: Hadley v. Baxendale, 26 Eng. Law & Eq. Rep. 398.

Now, in this case there were no special circumstances communicated, or in contemplation of the parties.  All that the defendants could foresee by ordinary forecast, as a result of the breach of their contract to return the boats, would be the expense to the plaintiff in taking them himself, and the natural and direct injury resulting from the delay.  They are liable for damages, the primary and immediate result of the breach of their contract, " and not for those which arise from a conjunction of this fault with other circumstances that are of an extraordinary nature."  Of course, by " fault" is here meant such as consists solely in breach of a contract, as not returning the boats in time, unnecessary delay in conveying goods to the place of destination, or the like.  If fault or negligence in the care of the property concurred with the flood, the case would come within the principle ruled in Scott et al. v. Hunter et al., 10 Wright 192.  As the facts appear, the general rule relative to damages applies.

Judgment reversed, and *venire facias de novo* awarded.